OZARKS ELECTRIC COOPERATIVE
CORPORATION *v.* Lawrence TURNER

82-94                                    640 S.W.2d 438

Supreme Court of Arkansas
Opinion delivered October 18, 1982

*Burke & Eldridge,* by: *John R. Eldridge, III,* for appellant.

*Davis & Bracey, P.A.,* by: *Charles E. Davis,* for appellee.

STEELE HAYS, Justice. In April, 1979, appellant, Ozarks Electric, discovered that the meter seal and glass were broken on the appellee's electric meter and evidence that the meter was not recording all appellee's electrical usage. Appellant threatened discontinuance of electric service unless appellee paid $1,500.00 for what it calculated to be due. Appellee denied he had tampered with the meter, but paid the amount demanded. Appellant also gave information to the prosecuting attorney and charges were brought against the appellee for theft of electrical services, but he was acquitted of the charge.

Appellee then filed charges against Ozarks for malicious prosecution and for the return of his $1,500.00. The trial judge directed a verdict for appellant on the malicious prosecution charge, but submitted the claim of $1,500.00 to the jury, which awarded $1,250.00.

Appellant brings this appeal for an interpretation of statutes granting jurisdiction of certain matters to the Arkansas Public Service Commission, Ark. Stat. Ann. §§ 73-101 et seq. (Repl. 1977), arguing that the dispute over the $1,500.00 was within the jurisdiction of the APSC and prior resort should have been made to that body. We disagree with the appellant's contentions.

Although the APSC is vested with broad authority, it does not have the power to deal exclusively with *all* matters involving utilities. We discussed this problem in *Southwestern Electric Power Company* v. *Coxsey,* 257 Ark. 534, 518 S.W.2d 485 (1975) where we distinguished between legislative functions, which could properly be carried out by an administrative body, and judicial functions, which could not. *See* also, *Southwestern Gas & Electric Co.* v. *City of Hatfield,* 219 Ark. 515, 243 S.W.2d 378 (1951). This does not mean that quasi-judicial functions cannot be performed in the exercise of the powers conferred for the general purposes

of regulating and controlling public utilities. "But the effect of the inquiry, and of the decision upon it, is determined by the nature of the act to which the inquiry and decision lead up." *Hatfield, supra,* at 521.

In *Coxsey, supra,* two electric companies, SWEPCO and Carroll, had certificates of convenience from APSC. SWEPCO had contracted with Beaver Water District to supply service, and Carroll filed a petition for declaratory judgment that Beaver was in territory belonging to Carroll. SWEPCO sought a writ of prohibition, contending the APSC had exclusive jurisdiction. We held that this was a judicial decision and not a legislative one:

> The primary question — in fact the only question — raised by Carroll in the instant suit is whether, under existing certificates from the APSC, it has the exclusive legal right to service Beaver. The legislative and administrative duties of APSC were exercised when the certificates were awarded. Carroll is saying: "We hold an exclusive franchise from the APSC to service the area upon which SWEPCO has encroached. We want SWEPCO ejected."

We concluded by quoting Justice Holmes from *Prentis* v. *Atlantic Coastline,* 211 U.S. 210 (1908):

> A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power.

There is an analogy to the present case. Here, the appellee is not questioning the rate that appellant charged — an issue that would be properly before the APSC. Nor does he challenge the power of the APSC to set the rate charged by Ozarks and to determine whether that amount is a reasonable *rate.* What appellee *does* contend is that the total amount Ozarks charged him is excessive in light of all

the circumstances and that the money is being wrongfully kept by Ozarks. Appellee disputed the charge that he had tampered with the meter and he was free to show what other factors might have contributed to a lower meter reading and for what length of time the meter was recording a lower than average reading. The issue was judicial in nature and appellee was entitled to have it resolved in a court of law.

Were the APSC to hear this case, it would not be acting in a legislative capacity. It would not be looking to the future and making a new rule or standard affecting the public or a group generally. Rather, it would be determining issues of fact from past actions involving a particular individual within existing laws and deciding the liabilities involved.

> Legislative and judicial functions are distinguished by elements of futurity and retrospection, generality and particularity, and discretion and initiation. Action of an administrative tribunal is adjudicatory in character if it is particular and immediate rather than, as in the case of legislative rulemaking action, general and future in effect. Another test for determining whether action by a commission is legislative is whether there is laid down a rule of future action which affects a group, and not the direct application of policy or discretion to a specific individual. 2 Am.Jur.2d Adm. Law § 162 at 966.

We find that the nature of the final act in this case was a judicial one, and was properly heard in the circuit court. Because we conclude the APSC did not have jurisdiction in this matter, we do not reach appellant's argument that the appellee was to make prior resort to the APSC.

Affirmed.